ADRIEN LOGISTICS LLC and PROGRESSIVE
PREFERRED INSURANCE COMPANY,

Plaintiffs,

– against –

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO POLICY
NUMBER Z178311-007NTL,

Defendant.

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO POLICY
NUMBER Z178311-007NTL,

Third-party Plaintiff,

– against –

KNIGHT REFRIGERATED TRANSPORT, LLC,

Third-party Defendant.

**OPINION AND ORDER**

22 Civ. 3002 (ER)

Ramos, D.J.:

Adrien Logistics LLC ("Adrien") and Progressive Preferred Insurance Company

("Progressive") brought this against Certain Underwriters at Lloyd's London Subscribing to

Policy Number Z178311-007NTL ("Lloyd's") on December 22, 2021, seeking declaratory

judgment that Lloyd's, as the insurer of a truck owned by Adrien, is required to cover the costs

incurred by Adrien in a separate lawsuit relating to a car crash that involved the truck.  Doc. 1-1.

Lloyd's then brought a third-party action against Knight Refrigerated Transport, LLC ("Knight")

on April 22, 2022, alleging, *inter alia,* that Knight breached a lease agreement that it had entered

into with Adrien for the truck.  Doc. 6.  Before the Court is intervenor Progressive's motion to

dismiss the third-party complaint in its entirety.  Doc. 21.  For the reasons set forth below, the motion is GRANTED.

## I.    BACKGROUND & PROCEDURAL HISTORY[1]

On April 4, 2016, Lloyd's issued a non-trucking liability policy to non-party Continental Trucking Association, Inc., which was in effect from April 1, 2016 through April 1, 2017 (the "Lloyd's Policy").  *See* Doc. 6-1.  Adrien was an insured under the Lloyd's Policy as a member of the Continental Trucking Association.  ¶ 10.

On April 12, 2016, Adrien leased a Peterbilt truck to Knight, a federally authorized for-hire motor carrier domiciled in Ohio.  *See* Doc. 6-2, the "Lease Agreement."  The contract was negotiated and executed in New Jersey, and the truck is registered in New Jersey.  *See* Doc. 26, Opposition to the Motion to Dismiss ("Opp."), at 13.  Pursuant to the Lease Agreement, Knight agreed to

> issue the required insurance in such an amount as to comply with all states laws, including liability and property damage insurance.  During the term of the lease [the truck] shall be solely and exclusively under the direction, supervision and control of [Knight], who shall assume full responsibility for the operation of [the truck] to the public, the shippers, and all the state and federal regulatory bodies.

Doc. 6-2.  Lloyd's was not party to the Lease Agreement.  *Id.*  At some point thereafter, Knight obtained a commercial auto insurance policy for the truck from Progressive (the "Progressive Policy"), which was in effect on April 25, 2016.[2]  ¶ 18; *see also* Doc. 1-1, the Complaint, ¶ 17.

On April 25, 2016, Jeanelie Chatelier, a principal of Adrien, was driving the truck on the Cross Bronx Expressway when it collided into a Freightliner truck operated by Joao Dacosta; the

---

[1] Unless otherwise indicated, citations to ¶ _ refer to the third-party complaint, Doc. 6.

[2] A full copy of the Progressive Policy is not before the Court.

Freightliner then crashed into a Honda operated by Samuel Kashani (the "Accident").[3]  ¶¶ 1, 11, 15–16; Doc. 1-1 ¶¶ 10–11.  Zachary Kashani, Nahid Hashani, Mahnaz Zabhi, and Evelyn Zabhi were passengers in the Honda (the "Passengers").  ¶ 17.

On June 8, 2018, the Passengers sued Adrien and Chatelier, among others, in the Supreme Court of New York, Queens County, alleging that they sustained personal injuries in the Accident as a result of the negligence of Adrien and Chatelier (the "Personal Injury Action"). ¶ 19; *see Mohnaz Zabih, et al. v. Adrien Logistics, LLC, et al*, Index No. 708936/2018. Progressive has been defending Adrien and Chatelier in the Personal Injury Action.  ¶ 19. Knight is not party to the Personal Injury Action.  *Id.*

Adrien and Progressive filed an action against Lloyd's (the "Underlying Action") on December 22, 2021 in the Supreme Court of New York, Bronx County, seeking declaratory judgment against Lloyd's that the truck was a covered auto under the Lloyd's Policy—but *not* under the Progressive Policy—and that Lloyd's is therefore obligated to reimburse Adrien and Progressive for costs incurred in connection with the Personal Injury Action.  *See* Doc. 1-1.  The case was removed to this Court on April 12, 2022 on the basis of diversity jurisdiction.  Doc. 1.

Lloyd's then brought a third-party action against Knight on April 22, 2022 (the "Third-party Action"), alleging that it twice breached the Lease Agreement:  first by failing to obtain the required insurance for the truck, and second by failing to cover the costs associated with defending Adrien and Chatelier in the Personal Injury Action.  ¶¶ 22–31.  Lloyd's also brings an indemnification claim, asserting that pursuant to the Federal Motor Carrier Safety Regulations, Knight is vicariously liable for any negligence of Adrien and Chatelier in causing the Accident.

---

[3] The third-party complaint alleges that Adrien and Chatelier were operating the truck in furtherance of the business of Knight.  ¶ 33.  Adrien, a New Jersey corporation, owned the truck.  ¶ 8.

Accordingly, Lloyd's argues that Knight is obligated to:  (1) defend Adrien and Chatelier in the Personal Injury Action; and (2) to reimburse Lloyd's to the extent that Lloyd's defends or indemnifies Adrien or Chatelier in connection with the Accident.  ¶¶ 32–36.  Lastly, Lloyd's seeks declaratory judgment that Knight is obligated to defend Adrien and Chatelier.  ¶¶ 37–41.

On June 3, 2022, Progressive filed a letter motion for conference, seeking leave from the Court to intervene pursuant to Rule 24(a) and to move to dismiss the third-party complaint.  Doc. 12; Fed. R. Civ. P. 24(a).  During a conference held on June 22, 2022, the Court granted Progressive leave to file the motion to dismiss.  On July 19, 2022, Progressive filed a motion to dismiss the third-party complaint for insufficient service of process and failure to state a claim. Doc 21; Fed. Rules Civ. P. 12(b)(5), (6).

## II.     LEGAL STANDARD

### *Rule 12(b)(6)*

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

*Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

## III.    DISCUSSION[4]

Progressive offers four reasons for why the Court should dismiss the third-party complaint:  (1) Lloyd's lacks standing to bring the two breach of contract claims since it was not party to the Lease Agreement between Adrien and Knight; (2) the breach of contract claims are time barred; (3) the indemnification claim fails to plead any of the essential elements; and (4) service of the third-party complaint upon Knight was defective.  *See* Memorandum in Support of Motion to Dismiss at 6–7, Doc. 22.

### *Choice of Law*

As a threshold matter, the Court must decide whether to apply the laws of New York or New Jersey.  "A federal court sitting in diversity applies the choice-of-law principles of the state in which it sits."  *First Hill Partners, LLC v. Bluecrest Capital Mgmt.*, 52 F. Supp. 3d 625, 632 (S.D.N.Y. 2014).  Given that diversity is the basis for jurisdiction in this case, the Court here applies the choice-of-law analysis of New York.

Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *Matter of Allstate Ins. Co. (Stolarz—New Jersey Mfrs. Ins. Co.)*, 81 N.Y.2d 209, 223

---

[4] As a preliminary matter, Lloyd's argues that the motion to dismiss is procedurally defective because Progressive did not file a motion to intervene, as required by Rule 24.  *See* Opp. at 7–12.  The Court disagrees.  During the June 22, 2022 conference, the Court expressly permitted Progressive to file a motion to dismiss as an intervenor, taking into account Progressive's June 3, 2012 letter motion, which set forth numerous reasons for why it was entitled to intervene.  *See* Doc. 12.  Where appropriate, as here, courts in this District may treat pre-motion letters as motions themselves.  *See Kapitalforeningen v. United Technologies* Corporation, 779 Fed. Appx. 69, 70 (2d Cir. 2019).

(1993); *see also GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d

Cir. 2006).  Absent an actual conflict between the two jurisdictions, the Court need not perform a

choice-of-law analysis.  *Medtronic, Inc. v. Walland*, No. 21 Civ. 2908 (ER), 2021 WL 4131657,

at *4 (S.D.N.Y. Sept. 10, 2021) (citing *Liang v. Progressive Cas. Ins. Co.*, 99 N.Y.S.3d 449, 451

(2d Dep't 2019)).

　　　In arguing the motion to dismiss, Progressive and Lloyd's both rely exclusively upon

New Jersey substantive law.  Moreover, neither party argues that there is a relevant difference

between New Jersey and New York contract or indemnification law.  In New York and New

Jersey, the elements for both offenses are substantively the same, and courts have found no

actual conflict of law in these subject areas.[5]  For purposes of resolving the instant motion, the

Court will apply New Jersey law, as the parties do in their memoranda.

### *Standing*

　　　Progressive argues that Lloyd's, as a non-party to the Lease Agreement, lacks standing to

sue Knight for its breach.  Lloyd's, however, asserts that it has standing as a third-party

---

[5] *Compare Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,* 631 F.3d 42, 52 (2d Cir. 2011) (defining the elements of a breach of contract claim in New York as:  "(1) the existence of a contract a contract between [the plaintiff] and th[e] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by th[e] defendant; and (4) damages to the plaintiff caused by th[e] defendant's breach"), *with Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (defining the elements of a breach of contract claim in New Jersey as:  "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages."); *see also, e.g.*, *VistaJetLimited v. Paragon Jets LLC*, No. 20 Civ. 5902 (JS) (SIL), 2022 WL 431431, at *5 (E.D.N.Y. Jan 10, 2022) ("[T]here is no conflict between New York and New Jersey contract law[.]").

*Compare Highland Holdings & Zito I, LP. v. Century/ML Cable Venture,* No. 06 Civ. 181(GBD), 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007) ("[A] cause of action for common-law indemnification can be sustained only if:  (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them."), *with Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.,* No. 97 Civ. 3496 (DRD), 2009 WL 5064757, at *7 (D.N.J. Dec. 16, 2009) ("A party is not entitled to common-law indemnity from another unless it and the other party have been found liable in tort to a third party for the same harm."); *see also, e.g.*, *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, 769 F. Supp.2d 322, 325–26 (S.D.N.Y. 2011) (finding no substantive difference between common law indemnification claims under New York and New Jersey law that would trigger a formal choice-of-law analysis)

beneficiary.  For the reasons set forth below, the Court finds that Lloyd's is not a third-party beneficiary.

Under New Jersey law, "[w]hether contract liability to a third party exists is informed by whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts[.]"  *Fackelman v. Lac d'Amiante de Quebec*, 398 N.J. Super. 474, 487 (App. Div. 2008) (marks and citations omitted).  Traditionally, third-party beneficiary status "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement."  *Ross v. Lowitz*, 222 N.J. 494, 513 (2015) (marks and citation omitted).

> The determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract.  They are the persons who agree upon the promises . . . [and] who create the rights and obligations which flow from the contract . . . .  Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention.

*Id.* (quoting *Borough of Brooklawn v. Brooklawn Hous. Corp.*, 124 N.J.L. 73, 76–77 (E. & A. 1940)) (marks omitted).  Unless the contracting parties intend to recognize the right of a third party to contract performance, the third person is only an incidental beneficiary, without any contractual standing.  *See id.* (citing *Broadway Maintenance Corp. v. Rutgers, State University*, 90 N.J. 253, 259 (1982)).  To determine the intention of the contracting parties, courts consider the contract and the circumstances attendant to its execution.  *Dixson v. JPay, Inc.*, Docket No. A-4498-19, 2022 WL 1510747, at *2 (N.J. Super. App. Div. May 13, 2022) (quoting *Rieder Cmtys. V. N. Brunswick*, 227 N.J. Super. 214, 222 (App. Div. 1988) (citation and marks omitted)).

Here, while Lloyd's asserts that it is a third-party beneficiary, the Lease Agreement is devoid of any reference to Lloyd's. Nor does the Lease Agreement suggest that Adrien and Knight intended to confer a right to performance to Lloyd's.

Lloyd's argues that the Lease Agreement required Knight to obtain insurance for the truck sufficient to comply with state law, *see* Doc. 6-2, and that New Jersey law requires every motor vehicle to obtain liability insurance against loss resulting from bodily injury caused by the vehicle, *see Connecticut Indem. Co. v. Podeszwa,* 392 NJ. Super. 480 (App. Div. 2007). Lloyd's purports, however, that the Progressive Policy did *not* provide coverage for the truck sufficient to comply with New Jersey law and that Knight therefore breached a contractual duty. According to Lloyd's, it should not be forced to compensate Adrien for any legal fees or awards that may result from the Personal Injury Action because it would be wrong to "punish[]" it for the failure of *Knight* to procure adequate coverage. Accordingly, Lloyd's argues that the Court should award it third-party beneficiary status. *See* Opp. at 17.

To the extent that Lloyd's asserts that it may enforce the Lease Agreement because it imposes a requirement on Knight to obtain insurance, the Court is unconvinced. "Vague, indirect reference" in a contract to a category of non-parties does not confer third-party beneficiary status on all who fall within the referenced category. *See Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 867 (D.N.J. 1992).

As noted, determining whether someone is third-party beneficiary turns on the intent of the contracting parties. Lloyd's' first line of reasoning, however, does not speak to the intentions of Adrien or Knight. Rather, Llofyd's argues that to avoid the possibility of being held liable for costs relating to the Accident on account of Knight's purported breach, Lloyd's should be permitted to sue Knight under the Lease Agreement. This argument is meritless. Lloyd's cites

no authority for the proposition that the insurer of an owner of a vehicle that is then leased, has

standing to sue the lessee for breach of the lease agreement when the insurer fears that it may be

held liable for damages resulting from an accident involving the vehicle.  Accordingly, this

reasoning fails.[6]

      Lloyd's' alternative theory for why it deserves third-party beneficiary status is similarly

unavailing.  According to Lloyd's, the Lease Agreement required Knight to assume

responsibility to state and federal regulatory bodies for operating the truck, and both New Jersey

public policy and the regulatory framework promulgated by the Federal Motor Carrier Safety

Administration require trucks to be insured for both and commercial use and non-commercial

use.  *See Connecticut Indem. Co. v. Podeszwa*, 392 N.J. Super. 480, 488–96 (App. Div. 2007)

(marks and citations omitted).[7]  Lloyd's argues that while the Progressive Policy covered

commercial use, the Lloyd's Policy issued to Adrien covered non-trucking use and that Knight

thereby failed to obtain adequate coverage for the truck because "the [Lease Agreement]

necessarily encompasse[d] th[e] federal integrated scheme to which Lloyd's was one-half of the

whole."  Opp. at 17.  Because of this purported breach, Lloyd's asserts that it is "inescapable"

that Lloyd's was an intended beneficiary of the Lease Agreement, as determining otherwise

---

[6] Relatedly, Lloyd's contends that Progressive, who controls the defense of Adrien in the Personal Injury Action, has unclean hands for failing to "join Knight" in that Action.  Opp. at 17.  This argument is similarly irrelevant to the question of whether Lloyd's is a third-party beneficiary of the contract.

[7] In *Podeszwa*, the insurer of a truck's lessor brought a declaratory judgment action against the victims of a car accident involving the truck—along with the lessor of the truck, the lessee of the truck, and the lessee's insolvent insurer—seeking declaratory judgment that its non-trucking endorsement did not provide coverage.  *See generally, Podeszwa*, 392 N.J. Super. 480, 488–96.  The trial court found in favor of the plaintiff.  On appeal, the court affirmed, reaching the narrow conclusion that public policy considerations do not prevent an insurer of a truck from excluding from liability coverage all losses sustained by third parties in an accident with the truck while it is being used for business purposes.  *Id.* at 481.  The Court ruled that so long as the truck is covered by an additional policy providing coverage for business use, exclusionary language does not violate state statute or public policy.  The court also noted, relying on federal law, that "a truck can never drive in and out of coverage."  *Id.* at 492–93.  *Podeszwa* did not involve a dispute about standing or a breach of contract claim.

would permit Knight to violate the state and federal policy that a truck must always be insured. *See generally id.* at 15–17.  Accordingly, Lloyd's concludes that the Court should allow it to sue Knight for breach of contract as a third-party beneficiary.

The Court disagrees.  As Progressive notes, none of Lloyd's' contentions with respect the adequacy of the truck's coverage has any bearing on whether Adrien and Knight intended to confer Lloyd's third-party beneficiary status.  Furthermore, Lloyd's cites no legal basis for why the Court should find that it has standing sue under an agreement that it is a stranger to.  For the foregoing reasons, each of the two breach of contract claims is dismissed for lack of standing.

### *Statute of Limitations*

The Court further finds that Lloyd's' first breach of contract claim—*i.e.*, that Knight failed to procure insurance sufficient to comply with state law—is time barred.  Article 2A of the Uniform Commercial Code (the "U.C.C."), which has been adopted by New Jersey, governs lease agreements for goods, such as trucks.  New Jersey Revised Statutes § 12A:2A-506(1) provides a four-year limitations period to bring an action for default under a lease contract.  The clock begins to run at the time of the breach, or when the aggrieved party discovers—or should have discovered—the breach, whichever is later.  § 12A:2A-506(2).[8]  In determining when an aggrieved party should have discovered a breach of an agreement, courts have imposed "an affirmative duty to use reasonable diligence to investigate a potential cause of action . . . . [M]ost contract actions presume that the parties to a contract know the terms of their agreement

---

[8] Lloyd's argues that the six-year common law limitations period for breach of contract claims should apply.  The Court disagrees.  The U.C.C. expressly governs lease agreements for automobiles and provides a 4-year limitations period, thereby displacing the longer common law period. *See MRL Development I, LLC v. Whitecap Inv. Corp*, 823 F.3d 195, 202–04 (noting that the U.C.C. must be liberally construed and applied to promote its underlying policies and that the principles of law and equity are displaced when particular provisions of the U.C.C. apply) (citations omitted).

and a breach is generally obvious and detectable with any reasonable diligence." *Peck v. Donovan*, 565 Fed. Appx. 66, 70 (3d Cir. 2012) (marks and citations omitted).

Here, Knight's alleged failure to obtain the required insurance occurred at least by the time of the Accident, on April 25, 2016, if not at the time of execution of the Lease Agreement, two weeks earlier, on April 12, 2016. Lloyd's brought the breach of contract claims six years later, on April 22, 2022. Accordingly, for purposes of deciding whether the first breach of contract claim is time barred, whether the purported breach occurred on the date of execution of the Lease Agreement or on the date of the Accident is of no material consequence.

Although the cause of action accrued, at latest, on April 25, 2016, Lloyd's argues that Adrien could not have discovered the breach until the Passengers brought the Personal Injury Action on June 8, 2018 and that the claim is therefore timely. The Court disagrees. As Progressive explains, Adrien failed to exercise reasonable diligence by failing to investigate whether Knight breached the Lease Agreement after the Accident. Adrien, who had entered into the Lease Agreement with Knight just weeks prior, could have easily learned whether Knight obtained the required insurance—a relevant inquiry, particularly in the immediate aftermath of the Accident. Accordingly, even if Lloyd's had standing to sue under the Lease Agreement, the first cause of action for breach of contract is untimely.[9]

### Indemnification

Under New Jersey law, indemnification is available either through an express contractual provision or a special relationship between the parties from which indemnification should be

---

[9] Lloyd's second breach of contract claim—*i.e.*, that Knight failed to defend and indemnify Adrien in the Personal Injury Action—would be timely if allowed. Adrien could not have learned of the failure of Knight to defend it in the Personal Injury Action until June 8, 2018, when that action commenced. The statute of limitations with respect to the second breach of contract claim therefore did not expire any earlier than June 8, 2022, four years after the filling of the Personal Injury Action, and approximately one month before Lloyd's brought the Third-party Action. As already held, however, the second breach of contract claim is in any event dismissed for lack of standing.

implied. *Trustees of Princeton University v. Tod Williams Billie Tsien Architects, LLP*, Civ. No.

19-21248, 2021 WL 9667971, at *6 (D.N.J. Jan. 29, 2021) (citing *Katz v. Holzberg*, Civ. No. 13-

1726, 2013 WL 5946502, at *2 (D.N.J. Nov. 4, 2013)).

 A contractual right to indemnification is available when the "intention to indemnify

against [a] certain loss or liability [is] expressed in such clear and unequivocal terms that no

other meaning can be ascribed to the language." *McCann v. Whitehall Manor Condo. Ass'n*,

Docket No. A-4086-19, 2021 WL 5505168, at *5 (Super. Ct. App. Div. Nov. 24, 2021); *see also*

*Kieffer v. Best Buy*, 205 N.J. 213, 223–24 (2011) ("If the meaning of an indemnity provision is

ambiguous, the provision is strictly construed against the indemnitee . . . [because] . . . a party

ordinarily is responsible for its own negligence and shifting liability to an indemnitor must be

accomplished only through express and unequivocal language.").

 "In the absence of a contractual obligation, indemnification may be implied where there

is a special relationship between the parties." *Trustees of Princeton University*, 2021 WL

9667971, at *6 (citing *Katz*, 2013 WL 5946502, at *2). A special relationship is one "sufficient

to impose certain duties [such that] a subsequent breach of those duties . . . permits an implied

indemnification." *Katz*, 2013 WL 5946502, at *3 (quoting *Ruvolo v. U.S. Steel Corp*, 133 N.J.

Super. 362, 367 (Ch. Div. 1975)) (marks omitted). There are four generally accepted special

relationships: principal-agent, bailor-bailee, lessor-lessee, and employer-employee. *Trustees of*

*Princeton University*, Civ. No. 19-21248, 2021 WL 9667971, at *6 (citing *Xiao-Wei Chou v. J.P.*

*Morgan Chase*, Civ. No. 18-15407, 2020 WL 1272086, at *2 (D.N.J. Mar. 17, 2020)). "Implied

indemnification based on a special relationship, however, is a narrow doctrine that is not

typically stretched beyond those four categories." *Id.* (citing *SGS U.S. Testing Co, Inc., v.*

*Takata Corp.,* Civ. No. 09-6007, 2012 WL 3018262, at *5 (D.N.J. July 24, 2012)).

Lloyd's argues that the Court may infer a contractual indemnification right based on the following language of the Lease Agreement:  the truck "shall be solely and exclusively under the direction, supervision and control of [Knight,]" and Knight shall "assume full responsibility for the operation of the [truck.]"  Doc. 6-2.  The Court disagrees.  The Lease Agreement refers neither to a right to indemnify nor to Lloyd's.  Furthermore, the language relied upon by Lloyd's does not suggest—let alone make clear and unequivocal—the intent of Knight to indemnify Lloyd's, or any insurer.  Interpreting similar contracts, courts have rejected indemnification claims.  *See, e.g.*, *Samsot v. Samsot*, Civ. No. 13-6886, 2016 WL 4432686, at *5 (D.N.J. Aug 18, 2016) (finding no contractual right to indemnity where the relevant provision of the contract "[did] not even include the word 'indemnify'").  Accordingly, this argument fails.

Lloyd's also does not have an implied right to indemnification.  Its relationship with Knight does not fall into any of the four categories where courts have found implied rights to exist; Knight and Lloyd's share neither a principal-agent, employer-employee, lessor-lessee, nor bailor-bailee relationship.  *Trustees of Princeton University*, 2021 WL 9667971, at *6.  In fact, Lloyd's does not allege that it ever had any direct dealings with Knight.  While Lloyd's is tangentially connected to the Lease Agreement as an insurer of Adrien, Lloyd's fails to cite any case where a court has deemed implicit to such a connection the right to indemnify.  Rather, courts have demonstrated a *reluctance* to stretch the implied right to indemnification beyond the clear-cut parameters of the lessee-lessor relationship.  *See, e.g.*, *Allied Corp. v. Frola*, 730 F. Supp. 626 (D.N.J. 1990) (rejecting land-owning lessors' implied indemnification claim against non-lessee defendants who were accused of generating hazardous waste on the lessors' land).  Accordingly, the Court finds that Lloyd's does not have a right to indemnification.  The

indemnification claim is therefore dismissed.[10]   The Court also dismisses the related claim for declaratory judgment.[11]

## IV.   CONCLUSION

For the foregoing reasons, Progressive's motion for dismiss the third-party complaint is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 21.

The parties are directed to appear for a telephonic status conference on March 16, 2023 at 10:30 a.m.  The parties are directed to dial (877) 411-9748 and to enter access code 3029857.


It is SO ORDERED.


Dated:    February 27, 2023
          New York, New York

_____
          Edgardo Ramos, U.S.D.J

---

[10] To salvage the indemnification claim, Lloyd's argues that it is entitled to *equitable subrogation* from Knight in the event that Lloyd's is found to owe a duty to defend and indemnify Adrien in the Personal Injury Action.  *See* Opp. at 18–19.  Under New Jersey law, equitable indemnity and equitable subrogation "are distinct legal concepts . . . governed by separate bodies of law and resulting in different recovery rights."  *Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 326 (D.N.J. 2013).  The third-party complaint only claims indemnification—not subrogation.

As a procedural matter, Lloyd's cannot, as it attempts to do, bring a new claim through its memorandum in opposition.  Whether Lloyd's could plead a subrogation claim has no bearing on the Court's decision to dismiss the indemnification claim.

What's more, even if Lloyd's *had* initially pleaded subrogation in the third-party complaint, the claim would have nonetheless been premature.  A liability insurer must have been already paid out a settlement or judgment on behalf of its insured to prevail on a claim of subrogation.  *See, e.g.*, *Andalora v R.D. Mech. Corp.*, 448 NJ Super 229, 236 (App. Div. 2017).  Presently, Lloyd's does not allege that it has paid—or been ordered to pay—anything to anyone.  Moreover, Lloyd's cites no instances where a court has permitted an insurer to preemptively subrogate a party for sums that it has not yet been found to owe.

[11] In light of the substantive defects of the third-party complaint discussed above, the Court need not examine whether service of it was procedurally improper, as Progressive contends.